## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                        CRIMINAL ACTION NO. 3:10-00224-01

CHARLES RICHARD BURKE
     also known as "Rick"
     also known as "D"
     also known as "Detroit Rick"
     also known as "Hasim Coleman"
     also known as "Rick Calloway"
     also known as "Jihad Alexander"

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Mr. Charles Richard Burke's Motion Requesting Sentence Reduction, ECF No. 228, and his Letter-Form Motion for Reduction of Sentence, ECF No. 229. For the reasons below, the Court **DENIES** these motions. ECF Nos. 228, 229.

### BACKGROUND

Mr. Burke pleaded guilty on April 23, 2012, to one count of conspiracy to distribute 280 grams or more of cocaine base and a quantity of oxycodone in violation of 21 U.S.C. § 846. *See* Written Plea of Guilty, ECF No. 151; Second Superseding Indictment at 1-2, ECF 68. On September 4, 2012, he was sentenced to 236 months of imprisonment followed by five years of supervised release, as well as a $2000 fine and $100 special assessment. Judgment in a Criminal Case, ECF No. 164. Mr. Burke is currently housed at FCI Ashland and has a projected release date of June 22, 2029. Find an inmate, *Fed. Bureau of Prisons*, https://www.bop.gov/inmateloc/.

Prior to sentencing, a Presentence Investigation Report (PSR) was prepared to assist the Court in determining Mr. Burke's guideline range for sentencing. The PSR attributed a total of

12,314.32 kilograms of marijuana equivalent[1] to Mr. Burke, yielding a base offense level of 36. PSR at 8, ECF No. 162. After applying a three-level reduction for acceptance of responsibility and a four-level increase based on Mr. Burke's role as an organizer or leader in the offense, the PSR recommended a total offense level of 37. *Id.* ¶¶ 27-38. The PSR also recommended that Mr. Burke be classified as a career offender, as he had three prior felony convictions for drug-related offenses. *Id.* ¶ 42 (citing U.S. Sent'g Guidelines Manual (U.S.S.G.) § 4B1.1(a) (U.S. Sent'g Comm'n 2011)). The prior offenses and accompanying career offender designation, however, did not raise Mr. Burke's recommended offense level, as the Sentencing Guidelines cap the offense level at 37 for any offenses with a statutory maximum of life imprisonment. *Id.* ¶ 35 (citing U.S.S.G. § 4B1.1(b)).

At sentencing, Mr. Burke had two objections to the PSR. First, he objected to the four-level aggravating role enhancement, arguing there was no indication that he was an organizer, manager, or supervisor of the conspiracy. *Id.* at 17. During the hearing, the parties stipulated to a two-level role enhancement, as the Government acknowledged it lacked sufficient evidence to support the four-point enhancement. Sentencing Hr'g Tr. 3:21-25, 4:1-21, ECF No. 175. The Court applied the two-level enhancement, leaving Mr. Burke with an offense level of 35. *Id.* Second, Mr. Burke objected to the PSR's recommendation that he be considered a career offender, arguing the Court should not count the same criminal activity as two separate convictions. PSR at 18, ECF No. 162. Namely, Mr. Burke pointed out that his drug trafficking conviction in federal court in 1994 and conviction in state court in 1996 were counted as two separate offenses, even though both arose from conduct occurring on November 8, 1993. *Id.*; Sentencing Hr'g Tr. 5-9, ECF No. 175. The

---

[1] The PSR converted the drug weight to its marijuana equivalent because the offense involved two different controlled substances. Cocaine base was converted at a rate of 3,571 grams of marijuana to one gram of cocaine base, while oxycodone was converted at the rate of 6,700 grams of marijuana to one gram of oxycodone. *Id.* at 7.

Court rejected this argument, noting that Mr. Burke was convicted of more than one offense in federal court, one of which involved conduct that occurred prior to the incident on November 8, 1993. *Id.* 10:1-15. The convictions, therefore, arose out of two different charging documents by distinct sovereigns and encompassed two distinct incidents of drug trafficking. *Id.* Ultimately, the Court adopted the recommendation that Mr. Burke be classified as a career offender. *Id.*

With a criminal history score of VI and an offense level of 35, the Guidelines recommend a term of imprisonment of 292 to 365 months. *Id.* 14:16-20. The Court varied downward from this recommendation, applying a two-level reduction to the offense level to account for the disparate treatment of crack cocaine and powder cocaine. *Id.* 20:1-4. Additionally, because a career offender status—and the resulting criminal history score of VI—would lead to an excessive level of punishment, the Court considered Mr. Burke as falling into criminal history category V. *Id.* 22:16-22. With an offense level of 33 and a criminal history of V, the Guidelines recommend imprisonment for 210 to 260 months. *Id.* 22:22-24. The Court imposed a sentence of 236 months, in the middle of this guideline range. *Id.* 22:25. The Fourth Circuit affirmed, finding the Court had not erred in determining the prior state and federal convictions constituted separate offenses under the career offender guidelines. *United States v. Burke*, 523 F. App'x. 256, 256 (4th Cir. 2013).

Since his sentencing, Mr. Burke has filed a series of motions. On November 12, 2014, Mr. Burke moved to reduce his sentence under 18 U.S.C. 3582(c)(2), arguing that his offense level should be lowered pursuant to Amendment 782. Letter-Form Mot. to Reduce Sentence, ECF No. 186. Enacted on November 1, 2014, Amendment 782 lowered the base offense level for drug quantity by two points and was applied retroactively via Amendment 788. U.S.S.G. App. C. Amends. 782, 788 (2014). The Court denied this motion, finding that the amendments did not

apply because Mr. Burke's sentence was based on his career offender status rather than the quantity of drugs. ECF No. 196.

On January 8, 2015, Mr. Burke moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based on ineffective assistance of counsel and the application of an allegedly incorrect legal standard. Mot. Under 28 U.S.C. § 2255, ECF No. 187. The Court adopted the magistrate judge's proposed findings and recommendations and denied this motion. ECF No. 203. Finally, Mr. Burke moved for compassionate release on May 19, 2020, alleging he was at high risk for the COVID-19 virus. Emergency Request for Compassionate Release at 1, ECF No. 208. The Court denied this motion because: 1) Mr. Burke had not exhausted all administrative remedies, and 2) even if he had, "the mere possibility of contracting [COVID-19] is not a sufficiently 'extraordinary and compelling' reason to justify a reduction in sentence." ECF No. 209.

Mr. Burke now moves to reduce in his sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A). Mot. Requesting Sentence Reduction, ECF No. 228. He argues that if sentenced today, he would not have been considered a career offender—pursuant to *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), a conspiracy conviction does not constitute a controlled substance offense in determining career offender status. Mot. Requesting Sentence Reduction at 1, ECF No. 228. Mr. Burke also points to his rehabilitative record and the retroactive application of Amendment 782 as further grounds for reducing his sentence. *Id.* at 2.

## LEGAL STANDARD

While "[g]enerally, a court may not modify a term of imprisonment once it has been imposed," there are several exceptions to this rule. *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019), *as amended* (Nov. 21, 2019) (internal quotations omitted) (citing 18 U.S.C. § 3582(c)). In 1984, Congress created a mechanism for federal inmates to seek what is now known as "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). By passing the First Step Act,

Congress partially amended this statute, enabling courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant [it]." *See* First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239-40 (2018); 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act § 603(b).

Before asking for a reduction in sentence, defendants must first ask the Bureau of Prisons ("BOP") to do so on their behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within 30 days, the defendant may file a motion before the court. *Id.* After an inmate has exhausted all administrative remedies, courts may reduce the inmate's sentence if they (1) find that extraordinary and compelling reasons warrant it, and (2) consider the relevant 18 U.S.C. § 3553(a) sentencing factors and determine the requested reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). However, as the Fourth Circuit has found, the consistency mandate "simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[ ].'" *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A).

As a result, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis added)). In doing so, they should consult § 1B1.13 of the Federal Sentencing Guidelines to help determine what is considered an extraordinary and compelling circumstances warranting a sentence reduction. *United States v. Jenkins*, 22 F.4th 162, 169-70 (4th Cir. 2021) ("Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction.").

## DISCUSSION

As an initial matter, Mr. Burke has exhausted his administrative remedies with the Bureau of Prisons. Mot. Requesting Sentence Reduction at 2, ECF No. 228; Ex. 2, Resp. of the United

States to Def.'s Mot. for a Sentence Reduction, ECF No. 248-2. The Court now turns to Mr. Burke's Motion to examine (1) whether he can demonstrate that if sentenced today, the career offender designation would not be applicable, and (2) whether this change constitutes an "extraordinary and compelling circumstance" in light of his post-sentencing record. Finally, the Court will consider the relevant § 3553(a) sentencing factors.

### A. Extraordinary and Compelling Circumstances

Mr. Burke premises his request for compassionate release on the argument that, if sentenced today, he would not qualify as a career offender. He cites *Norman* for the proposition that his instant offense would not qualify as a "controlled substance offense" for the purpose of the career offender enhancement. Mot. Requesting Sentence Reduction at 1, ECF No. 228. Because the Government concedes that Mr. Burke would not be considered a career offender if sentenced today, the Court proceeds to the issue of whether the resulting sentencing disparity constitutes an "extraordinary and compelling" circumstance warranting compassionate release. Resp. of the United States to Def.'s Mot. for a Sentence Reduction at 6, ECF No. 248.

#### i. Sentencing Disparity

Given that Mr. Burke, if sentenced today, would likely not qualify as a career offender, the Court must analyze whether the subsequent change in the Guidelines advisory range constitutes an extraordinary and compelling circumstance. The Government argues that this change in career offender classification does not rise to the heightened standard required under *McCoy*, *id.* at 6-7, while Mr. Burke argues that it does, Def.'s Mot. Requesting Sentence Reduction, ECF No. 228. Namely, the Government contends that granting Mr. Burke relief would result in sweeping consequences, as any change in sentencing law would provide a basis for defendants to seek sentence reductions under § 3582(c)(1)(A). Resp. of the U.S. to Def.'s Mot. for a Sentence

Reduction at 11-12, ECF No. 248. Mr. Burke responds that district courts are empowered to consider any extraordinary and compelling reason for release. Def.'s Mem. in Supp. at 4-6, ECF No. 152. He argues that, here, those reasons are present because of his rehabilitative record and the fact that, if sentenced today, he would face a significantly shorter sentence. *Id*. at 7.

The Fourth Circuit has found that a disparity in sentences constitutes an "extraordinary and compelling" circumstance warranting relief. 981 F.3d at 285. Likewise, this Court and others have granted compassionate release where a defendant no longer qualifies as a career offender, considering this change in sentencing law along with the defendant's post-sentencing record and the § 3553(a) sentencing factors. *See, e.g.*, *United States v. Shaw*, No. 13-0025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021); *United States v. Minter*, No. 2:12-CR-00191, 2021 WL 1894454, at *4 (S.D.W. Va., May 11, 2021); *United States v. Johnson*, No. 3:11-00054, 2022 WL 1510544, at *6 (S.D.W. Va. May 12, 2022). Still, as the Fourth Circuit noted in *McCoy*, whether circumstances are "extraordinary and compelling" remains a heightened standard. *Id*. at 287 ("It was not unreasonable for Congress to . . . limit those reductions to truly extraordinary and compelling cases.").

Had Mr. Burke not been classified as a career offender, he would have a total criminal history score of six, leaving him in criminal history category III. U.S.S.G. § 5A. Additionally, if sentenced today, Mr. Burke would benefit from a change in the drug offense tables, resulting in an additional two-level decrease in his base offense level. U.S.S.G. App. C. Amends. 782, 788 (2014). The quantity of drugs attributable to Mr. Burke would now result in a base offense level of 34, rather than the base offense level of 36 recommended in the PSR. *Id*.; PSR ¶ 28, ECF No. 162. Assuming Mr. Burke received the same enhancements and reductions that he did at sentencing, his offense level would be 31 and his criminal history category would be III. With an offense level

of 31 and criminal history category III, his recommended sentence of imprisonment would be 135 to 168 months. U.S.S.G. Sentencing Table. If Mr. Burke were sentenced at the highest end of the recalculated range, it would yield a difference of 68 months with his current 236-month sentence.

Though a 68-month disparity may, in some circumstances, rise to the level of "extraordinary and compelling," the Court finds that here it does not. There is no bright line rule to determine what amount of disparity between sentences constitutes an "extraordinary and compelling" circumstance. *United States v. Abrams*, No. 3:11-CR-00384-FDW, 2023 WL 3397418, at \*3 (W.D.N.C. May 11, 2023). Mr. Burke argues that the Court should calculate the disparity from "26 months above the low end of the guideline range, as it did in [D]efendant's original sentencing hearing." Def.'s Reply to Gov.'s Resp. at 2, ECF No. 252. However, that method of calculating the disparity does not account for a number of important sentencing factors, including (1) Mr. Burke's plea agreement, which called for a mandatory minimum sentence of ten years imprisonment, (2) the potential for the Court not to impose a middle-of-the-range sentence, and (3) the serious nature of the instance offense. *See United States v. Crumitie*, No. 1:06-CR-271, 2022 WL 1809312, at \*4 (M.D.N.C. June 2, 2022) (finding that, in light of these factors, a shorter sentence was "only one possible hypothetical result" of a lower guideline range). When examined in combination with Defendant's individualized circumstances and post-conviction record, the disparity is not an "extraordinary and compelling" circumstance warranting relief.

*ii. Other Individual Circumstances*

The significant length of the sentencing disparity is, in part, offset by Mr. Burke's post-sentencing behavior. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *United States v.*

*Chambers*, 956 F.3d 667, 675 (4th Cir. 2020). Mr. Burke's behavior while in BOP custody provides an important indicator as to whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

While Mr. Burke has taken advantage of educational opportunities and completed many valuable courses while incarcerated, *see* Inmate Education Data at 5-6, ECF No. 228, he has also committed several disciplinary infractions since his arrival at the BOP. *See* Inmate Discipline Data, ECF No. 248-5. Perhaps most egregious, Mr. Burke escaped from a satellite camp at FCI-Ashland on June 20, 2020, and evaded custody until he was apprehended by the U.S. Marshal Service on March 18, 2021. Letter for Judge Chambers from David LeMaster, ECF No. 248-3. Mr. Burke wrote to the Court to explain the escape, citing the spread of COVID-19 in FCI-Ashland, the recent death of his parents and his son, and the resulting impacts on his mental health. Letter from Charles Richard Burke to J. Chambers at 1, ECF No. 253. While the Court is sympathetic to the impact these events must have had on Mr. Burke, it cannot overlook the serious nature of his conduct while incarcerated. Therefore, while Mr. Burke has shown efforts at rehabilitation, his conduct while in prison does not warrant reconsideration of his sentence.

Mr. Burke's counsel cites *United States v. Ayala*, 540 F. Supp. 2d 676, 680 (W.D. Va. 2008), for the proposition that administrative remedies and further criminal prosecution are sufficient means of addressing a defendant's infractions while in custody.  Def.'s Reply to Gov.'s Resp. at 3, ECF No. 252. However, Mr. Burke's custody issues are distinguishable from the defendant in *Ayala* in regards to the seriousness of the post-conviction conduct. Whereas the defendant in *Ayala* had merely been cited for "assault without serious injury" and "fighting with another person," Mr. Burke escaped from a prison facility and evaded arrest for almost a full year. 540 F. Supp. 2d at 680. Moreover, *McCoy* makes clear that the Court is to consider "each

defendant's individual circumstances . . . including . . . their exemplary behavior and rehabilitation in prison." 981 F.3d at 274. Here, the Court has examined these individual circumstances, including Mr. Burke's post-conviction record, and determined that they do not rise to the level of "extraordinary and compelling."

B. 3553(a) factors

Nor do the § 3553(a) factors support reducing Mr. Burke's sentence. "[A] district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without 'considering the factors set forth in § 3553(a) to the extent that they are applicable.'" *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Mr. Burke's current sentence of 236 months of imprisonment appropriately considers the nature and circumstances of his conduct, his characteristics and criminal history, and the need to afford adequate deterrence. Unlike in *McCoy*, where relief was warranted due a sentencing disparity and individual circumstances including the defendant's youth and lack of criminal history at the time of the offense, 981 F.3d at 286, Mr. Burke was in his late thirties when he committed the crime at issue, PSR at 3, ECF No. 162. He also had a history of both drug trafficking and absconding his sentence—after serving 120 months of imprisonment for a drug trafficking offense and use of a firearm therein, he absconded from supervision on February 18, 2004. *Id.* ¶ 41. Though the Eastern District of Michigan chose to terminate his supervision early instead of issuing a warrant for arrest, Mr. Burke appears to have immediately become involved in the conspiracy at the heart of his instant conviction. *Id.* ¶¶ 12, 41. As the PSR notes, Mr. Burke's supervised release was terminated on May 13, 2005, and he became involved in a conspiracy to sell crack cocaine and oxycodone in the Huntington area from "at least early 2005." *Id.* ¶ 41. This criminal history sets Mr. Burke apart from the defendant in *McCoy*. While that defendant had "no relevant criminal history" at the time

of his offense, Mr. Burke had previously engaged in and been punished for similar conduct at the time of his sentencing. 981 F.3d at 278.

Finally, reducing Mr. Burke's sentence would not provide just punishment, promote respect for the law, or ensure adequate deterrence. The need for deterrence holds particular weight for the Court in this instance, given the length of time Mr. Burke has left to serve and his criminal history. It appears that the previous 120-month sentence was inadequate to deter Mr. Burke from immediately engaging in the same conduct. Moreover, his history of absconding—be it from supervised release or imprisonment—indicates a lack of respect for the judicial process. While the Court recognizes that Mr. Burke would no longer be classified as a career offender under *Norman*, and that he has taken advantage of programming during his incarceration, the Court finds that the § 3553(a) sentencing factors do not support reducing his sentence.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Burke's Motion Requesting Sentence Reduction for Extraordinary and Compelling Reasons, ECF No. 228, and Letter-Form Motion for Reduction of Sentence, ECF No. 229.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER:        May 25, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE